IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL L. KAWECKI, | ) | CASE NO. 4:25-CV-00933-DAP |
| | ) | |
| Plaintiff, | ) | DAN AARON POLSTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Samuel L. Kawecki ("Mr. Kawecki") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated March 8, 2025). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.      PROCEDURAL HISTORY

On October 11, 2022, Mr. Kawecki filed his applications for DIB and SSI. (Tr. 223, 230). Mr. Kawecki's applications related to the removal of muscle from his thigh and arm, diabetes, post-traumatic stress disorder, and depression. (Tr. 275).

The Social Security Administration ("SSA") denied Mr. Kawecki's applications initially and upon reconsideration. (Tr. 59, 72, 84, 96). Mr. Kawecki requested a hearing before an administrative law judge ("ALJ"). (Tr. 137). The ALJ held a telephonic hearing on March 6, 2025,

at which Mr. Kawecki was represented by counsel. (Tr. 33). Mr. Kawecki testified, as did an impartial vocational expert ("VE"). On March 28, 2024, the ALJ issued a written decision, finding that Mr. Kawecki was not disabled. (Tr. 15). The ALJ's decision became final on March 25, 2025, when the Appeals Council declined further review. (Tr. 1).

On May 8, 2025, Mr. Kawecki filed his complaint, challenging the Commissioner's final decision. (ECF No. 1). Mr. Kawecki asserts the following assignments of error:

(1)    The ALJ failed to comply with 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) or support with substantial evidence his analysis of Dr. Gallagher's and Mr. Klyop's Prior Administrative Medical Findings. Given the lack of further physical opinions, this omission prevents a finding of substantial evidence for the residual functional capacity and the finding of no disability.

(2)    The ALJ failed to comply with 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) or support with substantial evidence his analysis of Dr. Dres' and Dr. Lovko's Prior Administrative Medical Findings. Given the lack of further mental opinions, this omission prevents a finding of substantial evidence for the residual functional capacity and the finding of no disability.

(ECF No. 8, PageID # 2510).

## III.    BACKGROUND

### A.    Personal, Educational, and Vocational Experience

Mr. Kawecki was born in 1978 and was 42 years old on the alleged onset date. (Tr. 230). He is divorced and does not have any minor children. (Tr. 230-31). He has prior work experience as an electrician, hotel general manager, and laborer. (Tr. 55, 276).

### B.    Relevant Hearing Testimony

#### 1.    Mr. Kawecki's Testimony

Mr. Kawecki testified that he had surgery to treat his compartment syndrome in 2022 but that his right arm is worse now than before the surgery and that he has minimal feeling in his right hand. (Tr. 44-45). He testified that he has difficulty with basic activities, including taking a shower and washing dishes, and that he also drops objects. (Tr. 42, 45). He testified that he went to physical therapy after the surgery and took gabapentin, but that neither helped. (Tr. 46-47). Mr.

Kawecki also testified that he does not have feeling in his hands, arms, and feet as a result of diabetic neuropathy. (Tr. 47, 50). He further testified that he wears a brace on each hand at night. (Tr. 48). He also testified that he needs to lay down because of his back pain and that it is difficult for him to sit in a chair and watch television. (Tr. 42). Mr. Kawecki further testified that he has not had surgery on his back and does not take any medication, but that he does exercises and stretches for it every day. (Tr. 43-44).

Mr. Kawecki testified that he does not leave his bedroom as a result of his depression. (Tr. 42). He also testified that, ever since the COVID-19 pandemic began, he has had difficulties getting out of the house and being around people. *Id*. He further testified that he goes to therapy once a month and that he takes medication, which his doctors recently increased. (Tr. 48). He testified that he stays far away from other people outside of his doctor visits because he is afraid of getting sick. (Tr. 49).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Mr. Kawecki's age, education, and work experience who was limited to light work and could stand and walk for up to four hours; frequently handle, finger, and feel bilaterally; occasionally climb ramps and stairs; never use ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle; was limited to simple, routine, and repetitive tasks that were not performed at a production rate pace; could make simple work-related decisions; could occasionally interact with supervisors, coworkers, and the public; and could handle few changes in a routine work setting. (Tr. 55-56). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as an order caller, merchandise marker, or collator operator. (Tr. 56).

3

**C.**  **Relevant Opinion Evidence**

*1.*  ***State Agency Medical Consultants***

On February 7, 2023, Maureen Gallagher, D.O., a state agency medical consultant, opined that Mr. Kawecki could perform light work, could stand or walk for four hours in an eight-hour workday, could sit for six hours in an eight-hour workday, and could frequently balance; stoop; kneel; and crouch. (Tr. 66-67). Dr. Gallagher also opined that Mr. Kawecki could occasionally climb ramps and stairs, occasionally crawl, and never climb ladders, ropes, or scaffolds. (Tr. 67). Dr. Gallagher further opined that Mr. Kawecki should avoid all exposure to moving machinery and unprotected heights and should not operate commercial vehicles or heavy machinery. (Tr. 68). On August 10, 2023, Dr. Gerald Klyop concurred with Dr. Gallagher's opinions on reconsideration. (Tr. 92).

The ALJ found that the opinions of the state agency medical consultants were overall persuasive and were supported by the longitudinal record. (Tr. 25).

*2.*  ***State Agency Psychologists***

On January 15, 2025, Demetri Dres, Psy.D., a state agency psychologist, opined that Mr. Kawecki had moderate limitations in his ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself, as well as a mild limitation in his ability to understand, remember, or apply information. (Tr. 64). Dr. Dres also opined that Mr. Kawecki could perform simple, repetitive tasks and infrequent or occasional detailed tasks at a slow rate and with flexible production standards. (Tr. 65). Dr. Dres further opined that Mr. Kawecki should avoid assignments with high production orders, urgent tasks, and projects with a short lead time. *Id*. Dr. Dres also opined that Mr. Kawecki should engage in only brief and superficial contact with supervisors and should avoid contact with the public. *Id*. Finally, Dr. Dres opined that Mr. Kawecki could not perform higher order tasks on a sustained full-time basis. *Id*. On August 31,

2023, Ken Lovko, Ph.D. concurred in Dr. Dres' findings on reconsideration. (Tr. 89-90).

The ALJ found that the opinions of the stage agency psychologists were supported and well-reasoned, but also found that they were phrased in a manner that overcomplicated Mr. Kawecki's abilities. (Tr. 25). The ALJ stated that the RFC fully accounted for Mr. Kawecki's limitations and was phrased in a manner that was broader than, and fully encompassed, the state agency psychologists' limitations. *Id*.

### D.  Relevant Medical Evidence

#### 1.  *Physical Impairments*

On March 8, 2023, Mr. Kawecki was diagnosed with compartment syndrome in his right leg. (Tr. 2302). On June 9, 2023, Mr. Kawecki had a follow-up appointment for his diabetes and lower back pain. (Tr. 2311). It was noted that a recent MRI of his lumbosacral spine showed mild to moderate bilateral foraminal stenosis. (Tr. 2312). On examination, Mr. Kawecki was positive for back pain. (Tr. 2313). It was noted that prior treatment for compartment syndrome included his right forearm, hand, and buttocks. (Tr. 2314).

Mr. Kawecki also suffers from type 1 diabetes with polyneuropathy and uses an insulin pump. (Tr. 2310). On February 1, 2023, he had an appointment with Retina Associates of Cleveland regarding his diabetic retinopathy. (Tr. 2286). An angiography revealed significant capillary nonperfusion with multiple areas of neovascularization in both eyes. (Tr. 2287). He was scheduled to receive injections in both eyes. *Id*.

On April 19, 2023, Mr. Kawecki returned to receive the injections. (Tr. 2290). However, he was unable to complete the procedure due to anxiety. (Tr. 2290-91). Mr. Kawecki returned again on May 24, 2023, and was able to receive the injections despite continuing anxiety. (Tr. 2292). He had another visit on June 7, 2023 to receive laser treatment in his right eye, but was unable to complete the procedure. (Tr. 2416-17).

2.    ***Mental Health Issues***

On June 5, 2020, before the alleged onset date, Mr. Kawecki had a psychotherapy appointment at Liberty PsyCare. (Tr. 1994). He reported depression and hopelessness and said that he did not speak to his family. *Id*. He also reported that his health issues were debilitating and that he could not work. *Id*. On examination, Mr. Kawecki was severely depressed, moderately anxious, and moderately angry, with poor insight and judgment, racing thoughts, flights of ideas, and unusual thought content. (Tr. 1995).

On July 10, 2020, Mr. Kawecki had a follow-up appointment at Liberty PsyCare. (Tr. 2014). He reported that he went to a cookout for the Fourth of July holiday, which he enjoyed. *Id*. Mr. Kawecki also discussed an upcoming court visit. *Id*. On examination, he was cooperative and friendly, with loud but well-articulated speech, moderately depressed, moderately anxious, and mildly irritable. *Id*. He displayed racing thoughts, flights of ideas, and worried thought content, but also displayed logical, relevant, and coherent thought processes. *Id*.

At a follow-up telehealth appointment a week later, Mr. Kawecki reported that his week had gone pretty well and that he had gone grocery shopping. (Tr. 2017). On examination, Mr. Kawecki was moderately depressed, moderately anxious, and mildly angry. *Id*.

Mr. Kawecki had another follow-up telehealth appointment on October 23, 2020. (Tr. 2073). He reported that he had been doing a bit better since he began seeing a chiropractor. *Id*. He said that he was no longer having pins and needles down his legs but that he continued to have pain in his back. *Id*. He reported that he was able to walk outside with his dogs. *Id*. On examination, he was friendly, cooperative, moderately depressed, and moderately anxious, with normal speech, racing thoughts, and obsessive and unusual thought content. (Tr. 2073-74). On December 29, 2020, Mr. Kawecki reported that he was depressed because it was the anniversary of his mother's death and that he was anxious about an upcoming trial resulting from a fight with his adult

daughter. (Tr. 2096).

On January 18, 2021, Mr. Kawecki reported that he was depressed and hated leaving the house. (Tr. 2104). On February 12, 2021, Mr. Kawecki reported that he had not been taking some of his medications. (Tr. 2119). He also reported that staying busy kept him from getting anxious or depressed. *Id*. On February 19, 2021, Mr. Kawecki likewise reported that his depression was lower when he was active. (Tr. 2123). On February 26, 2021, Mr. Kawecki reported that he had been fixing electrical things at a pawn shop and that his anxiety had generally been low. (Tr. 2133). On March 26, 2021, he reported that his job at the pawn shop was going well but that sitting for eight hours was difficult. (Tr. 2147). On April 9, 2021, Mr. Kawecki reported that he was working on various projects to keep his stress levels low. (Tr. 2155).

On June 18, 2021, Mr. Kawecki reported that he had left the pawn shop because it was not a good fit. (Tr. 2177). He also said that he was sad because a friend had moved to North Carolina. *Id*. Mr. Kawecki further reported that his daughter had a restraining order against him. *Id*. He said that he wanted to increase his medication because he had been getting depressed more frequently. *Id*. On examination, Mr. Kawecki was restless, mildly agitated, severely depressed, and moderately anxious. (Tr. 2178). On June 14, 2022, Mr. Kawecki reported that he was on probation for a domestic violence charge. (Tr. 2243).

Mr. Kawecki had another follow-up session on July 19, 2022. (Tr. 2251). He reported a lack of motivation and energy, various financial and medical stressors, and a current domestic violence charge. *Id*. He also reported that he had accidentally overdosed on fentanyl. *Id*. On examination he was restless and moderately depressed. (Tr. 2252).

Mr. Kawecki had a medication management session on October 10, 2023. (Tr. 2474). He reported that he had been out of his medications for a month and that he felt more depressed and anxious. (Tr. 2475). He also reported avoiding public places due to past trauma and anxiety. *Id*.

On examination, Mr. Kawecki was mildly anxious and moderately depressed with normal speech, good insight and judgment, and logical thought processes and thought content. *Id*. His medications were reintroduced at a lower dose, with a plan to titrate them back up to an effective dose. (Tr. 2476). At a follow-up session on December 5, 2023, Mr. Kawecki reported minimal improvement in his anxiety and depression. (Tr. 2479).

## IV.  THE ALJ'S DECISION

The ALJ first determined that Mr. Kawecki met the insured status requirements of the Social Security Act through September 30, 2024. (Tr. 20). The ALJ further determined that Mr. Kawecki had not been engaged in substantial gainful activity since December 7, 2020, the alleged onset date. *Id*.

The ALJ next determined that Mr. Kawecki had the following severe impairments: degenerative disc disease of the lumbar spine; diabetes mellitus with retinopathy and neuropathy; compartment syndrome of the right upper and lower extremities; poly substance use disorders; posttraumatic stress disorder (PTSD); depressive disorder; and anxiety disorder. *Id*. The ALJ found, however, that none of Mr. Kawecki's severe impairments, whether considered singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

The ALJ next determined that Mr. Kawecki had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can walk or stand for a total of 4 hours per day; he can frequently handle, finger, and feel items (bilaterally); never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, or crawl; frequently balance, stoop, kneel, or crouch; he can never work at unprotected heights, nor with moving mechanical parts; and he can never operate a motor vehicle. He can perform simple, routine and repetitive tasks, but not at a production rate pace; he is able to make simple work-related decisions; he can interact with coworkers, supervisors, or the public occasionally; but can tolerate few changes in a routine work

setting.

(Tr. 22).

The ALJ next found that Mr. Kawecki could not perform his past relevant work. (Tr. 25). However, the ALJ also determined that Mr. Kawecki could perform jobs that existed in significant numbers in the national economy, including work as an order caller, merchandise marker, and collator operator. (Tr. 26-27). Accordingly, the ALJ determined that Mr. Kawecki was not disabled. (Tr. 27).

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's

decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.  Standard for Disability

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[1]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520.

---

[1] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq.* The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*, corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

### C.  <u>Analysis</u>

Mr. Kawecki asserts two assignments of error, both of which challenge the ALJ's treatment of the opinion evidence. In his first assignment of error, he argues that the ALJ did not properly evaluate the opinions of the state agency medical consultants. In his second assignment of error,

Mr. Kawecki argues that the ALJ made the same mistake with respect to the state agency psychologists.

Because Mr. Kawecki filed his disability claim after March 27, 2017, the "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 404.1527; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809 (N.D. Ohio Mar. 31, 2021). Instead, the current regulations state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id*.

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting

*Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). "As long as the ALJ discussed the supportability and consistency of the opinion and supported [the ALJ's] conclusions with substantial evidence within his decision, the Court will not disturb [the ALJ's] decision." *Njegovan v. Comm'r of Soc. Sec. Admin*., No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022).

### 1. *State Agency Medical Consultants*

Mr. Kawecki first argues that the ALJ did not properly analyze the supportability and consistency of the state agency medical consultants, who opined that Mr. Kawecki could perform light work and could frequently climb ladders, ropes and scaffolds; balance; stoop; kneel; and crouch; occasionally climb ramps and stairs; occasionally crawl; never climb ladders, ropes, or scaffolds; should avoid all exposure to moving machinery and unprotected heights; and should not operate commercial vehicles or heavy machinery. (Tr. 67-68, 92). The ALJ evaluated those opinions as follows:

> The State Agency medical consultants, Dr. Maureen Gallagher, DO and Dr. Gerald Klyop, MD both opined that the claimant can perform light exertion work, but walk or stand for a total of 4 hours per day; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs, or crawling; frequently balancing, stooping, kneeling, or crouching; he must avoid all exposure to moving machinery, unprotected heights, and never operate commercial vehicles or heavy machinery. (Ex. 2A/7-9; 8A/7-8)
>
> These opinions are overall persuasive, and supported by the longitudinal record.

(Tr. 25).

Mr. Kawecki acknowledges that the ALJ's analysis briefly addressed consistency by noting that the state agency medical examiners' opinions were consistent with the longitudinal record, he Mr. Kawecki also argues that the ALJ's analysis was inadequate because it only explains

*that* the ALJ considered consistency, not *how* the ALJ did so. Mr. Kawecki also argues that the ALJ wholly failed to address the supportability of the state agency medical examiners' opinions. The Commissioner concedes that the ALJ did not address supportability, but argues that any error was harmless because the ALJ adopted the state agency medical examiners' opinions and, in fact, included additional manipulative limitations in the RFC that were not contained in the state agency medical examiners' opinions. The Commissioner's argument is well-taken.

As an initial matter, I agree with both Mr. Kawecki and the Commissioner that the ALJ did not address the supportability of the state agency medical examiners' opinions. As noted above, the supportability element goes to how well the medical source supported his or her opinions with objective evidence from the record. The ALJ's brief, one-sentence analysis does not speak to that question at all, instead focusing only on whether the opinions were consistent with the overall body of evidence—i.e., consistency.[2]

The question, then, is whether the ALJ's error in failing to address supportability was harmless. An ALJ's failure to adequately explain the supportability or consistency of a medical opinion may be harmless in three circumstances: (i) when the opinion was 'so patently deficient that the Commissioner could not possibly credit it'; (ii) when the Commissioner made findings consistent with the opinion; or (iii) the Commissioner otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion." *Croft v. Comm'r of Soc. Sec.*, No. 3:22-CV-00511, 2022 WL 17717495, at *8 (N.D. Ohio Nov. 10, 2022) (report and recommendation) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).[3]

The Commissioner primarily argues that the second circumstance applies here because the

---

[2] Because I conclude that the ALJ did not adequately address the supportability factor, I need not decide whether the ALJ's discussion of the consistency factor was inadequate. To the extent that it was, the harmless error analysis with respect to supportability would also apply to consistency.

[3] *Wilson* pre-dated the revisions to the regulations eliminating the treating physician rule. However, "district courts within this circuit have applied that analysis to the post-March 27, 2017 regulations." *Croft*, 2022 WL 17717495, at *8 n.5 (citing cases).

ALJ adopted an RFC that was actually more restrictive than the state agency medical consultants'

opinions. In particular, the Commissioner notes that the ALJ adopted all of the restrictions that the

state agency medical consultants identified, including that Mr. Kawecki could only walk or stand

for four hours per day; could never climb ladders, ropes, or scaffolds; could occasionally crawl

and climb ramps or stairs; could frequently balance, stoop, kneel, and crouch; and could never

work at unprotected heights, operate a motor vehicle, or work with moving mechanical parts.

*Compare* Tr. 22 *with* Tr. 67-68, 92.  In addition, the Commissioner notes that the ALJ included

additional manipulative limitations, finding that Mr. Kawecki could only occasionally handle,

finger, and feel items. (Tr. 22).

Mr. Kawecki does not identify any limitations from the state agency medical consultants'

opinions that the ALJ failed to incorporate into the RFC. Nor does he dispute that the ALJ included

additional manipulative limitations. Instead, he argues that applying a harmless error analysis

would render illusory the procedural protections claimants receive from regulations requiring the

ALJ to address the supportability and consistency of medical opinions.

Mr. Kawecki's argument runs contrary to the weight of authority in this Circuit. Indeed,

"numerous cases in this circuit demonstrate that claimants are not prejudiced [by an ALJ's failure

to address supportability or consistency] when an ALJ adopts a more restrictive RFC than the

expert recommended." *Roberts v. Comm'r of Soc. Sec.*, No. 3:22-CV-00051-CEH, 2023 WL

4243225, at *17 (N.D. Ohio Jan. 23, 2023) (citing cases); *see also Miller v. Comm'r of Soc. Sec.*,

No. 1:24-CV-378-JPC, 2024 WL 4985903, at *9 (N.D. Ohio Dec. 5, 2024) (holding that ALJ's

error in evaluating supportability of medical opinion was harmless where "the functional

limitations that the ALJ ultimately incorporated into [claimant's] RFC were either consistent with,

or more restrictive than, the functional limitations provided by" the medical source), *report and*

*recommendation adopted*, 2025 WL 957566 (N.D. Ohio Mar. 31, 2025); *Troyan v. Comm'r of*

*Soc. Sec.*, No. 1:24-CV-02040-DAP, 2025 WL 2437255, at *12 (N.D. Ohio Aug. 25, 2025) ("Although the ALJ did not articulate how he considered the supportability and consistency of Dr. Haaga's opinion, he adopted the restriction to performing simple, routine tasks so the error is harmless."), *report and recommendation adopted*, 2025 WL 2605401 (N.D. Ohio Sept. 9, 2025).

As the Commissioner concedes, the ALJ's decision was not perfect. The ALJ should have addressed both the supportability and consistency of the state agency medical examiners' opinions, and the ALJ should have done so in a manner that readily enabled a reviewing court to trace the ALJ's reasoning. But because the ALJ adopted the restrictions contained in those opinions—and, in fact, incorporated additional manipulative restrictions beyond those the state agency medical consultants identified—Mr. Kawecki was not harmed by the ALJ's imperfect decision. I therefore recommend that the Court reject Mr. Kawecki's first assignment of error.

2. ***State Agency Psychologists***

In his second assignment of error, Mr. Kawecki argues that the ALJ erred in his evaluation of the opinions from the state agency psychologists. The ALJ addressed those opinions as follows:

> Addressing his mental impairments, Dr. Demetri Dres, PsyD and Dr. Ken Lovko, PhD agreed that the claimant has no more than moderate mental health limitations, maintaining the ability to perform simple, repetitive tasks, and infrequent detailed tasks at a slowed pace, with flexible production standards, and no high production orders, urgent tasks, or projects with short lead time; he has a low stress tolerance, weak coping skills, and compromised impulse control which impede his ability to interact with others moderately; and he displays self-defeating behaviors and poor impulse control which compromise his ability to adapt to work stress. (Ex. 2A/5, 9-11; 8A/8-9)

> These opinions are supported and well-reasoned, but are phrased in a manner which overcomplicates the claimant's abilities. The finding of residual functional capacity above fully accounts for the claimant's history of substance use, his tendency to withdraw, and his periodic noncompliance with prescribed medications. The phrasing I have used is more broad than the psychological consultants articulated, and encompasses the scenarios they have described.

(Tr. 25).

Mr. Kawecki acknowledges that the ALJ addressed the supportability and consistency of the state agency psychologists' opinions, but argues that the ALJ's analysis was inadequate because it was non-specific and did not cite to specific records. As with the state agency medical consultants, however, Mr. Kawecki has not identified any limitations that the state agency psychologists opined on that the ALJ failed to incorporate into the RFC. Rather, the ALJ stated that the language in the RFC was broader than the language the state agency psychologists used and fully encompassed the limitations they identified. That was appropriate, as "even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . . ." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). And, because the ALJ adopted an RFC that incorporated the state agency psychologists' limitations, any error in failing to adequately explain his supportability and consistency findings was harmless. *See Roberts*, 2023 WL 4242225, at *17. *Miller*, 2024 WL 4985903, at *9.

Mr. Kawecki raises several additional challenges to particular aspects the ALJ's analysis. First, he notes that the state agency psychologists limited him to occasional or infrequent detailed tasks, and he argues that it "seems likely" a more thorough analysis of their opinions may have resulted in a limitation regarding his ability to perform detailed tasks. (ECF No. 8, PageID # 2517). As the Commissioner notes, however, the ALJ actually limited Mr. Kawecki to simple, routine, and repetitive tasks, and thus already excluded detailed tasks. (Tr. 22).

Mr. Kawecki also argues that each of the jobs the ALJ identified at Step Five has a GED reasoning level of two, which means the employee must apply commonsense understanding to carry out detailed but uninvolved instructions. *See* Order Caller, DOT No. 209.667-014, 1991 WL 671807; Merchandise Marker, DOT No. 209.587-034, 1991 WL 671802; Collator Operator, DOT No. 208.685-010, 1991 WL 671753. He contends that, if the ALJ had included additional detailed

task limitations based on a more fulsome analysis, it may have excluded those jobs. However, "neither the Commissioner nor the VE has an obligation to employ the DOT, and there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011).

Finally, Mr. Kawecki argues that, because the ALJ referenced his substance use issues, it "seems likely" that a more detailed analysis might have resulted in the ALJ finding that Social Security Ruling ("SSR") 13-2p is applicable. (ECF No. 8, PageID # 2517). SSR 13-2p sets forth the SSA's policies for considering whether drug addiction and alcoholism ("DAA") is a contributing factor material to the disability determination. 2013 WL 621536 (Feb. 20, 2013). It provides that, *if* the Agency determines that the claimant's substance abuse is a medically determinable impairment *and* that the claimant is disabled when considering all the claimant's impairments, the Agency must then determine whether the claimant would be disabled if he or she stopped using drugs or alcohol. *Id*. at *2.

Here, the ALJ found that Mr. Kawecki was not disabled even though polysubstance use disorder was one of his severe impairments. Because the ALJ found that Mr. Kawecki was not disabled even accounting for his substance use issues, the ALJ did not need to determine the materiality of his substance abuse impairment. *See Kasarnich v. Comm'r of Soc. Sec*., No. 5:24-cv-01130, 2025 WL 2676550, at *5 (N.D. Ohio Sept. 18, 2025) (noting that SSR 13-2p "provides that a DAA materiality determination will only [be] made when a claimant has been found disabled"); *Dozier v. O'Malley*, No. 3:24 cv 00180, 2025 WL 627214, at *5 (M.D. Tenn. Feb. 26, 2025) ("A DAA materiality determination is only made when there is both evidence establishing a substance use disorder and 'we find that the claimant is disabled considering all impairments, including the DAA.'") (quoting SSR 13-2p, 2013 WL 621536, at *4). Mr. Kawecki's argument that a more detailed analysis may have led to a disability finding under SSR 13-2p is unavailing.

I therefore recommend that the Court reject Mr. Kawecki's second assignment of error.

## VI.    CONCLUSION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: January 12, 2026

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and

recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).